UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIE LEE WARD,

    Plaintiff,

v.                                                                   Case No: 8:16-cv-2716-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## **ORDER**

    Plaintiff, Willie Lee Ward, seeks judicial review of the denial of his claims for a period of disability, disability insurance benefits, and supplemental security income. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

## **BACKGROUND**

### A.    Procedural Background

    Plaintiff filed applications for disability insurance benefits and supplemental security income on April 16, 2012. (Tr. 196–201, 204–10.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 79–91, 99–109.) Plaintiff then requested an administrative hearing. (Tr. 110–12.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 26–44.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 10–20.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals

Council denied. (Tr. 1–4.) Plaintiff then timely filed a complaint with this Court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

**B.  Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1966, claimed disability beginning on January 22, 2012. (Tr. 45.) Plaintiff has a limited education. (Tr. 18.) Plaintiff's past relevant work experience included work as a loader/unloader and construction worker. (Tr. 18.) Plaintiff alleged disability due to a stroke, left leg pain and numbness, high blood pressure, headaches, and learning difficulties. (Tr. 31–35, 45.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since January 22, 2012, the alleged onset date. (Tr. 12.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: borderline intellectual functioning, being overweight, post-cerebrovascular accident, hypertension, and diabetes. (Tr. 12.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"). (Tr. 13–14.) The ALJ then concluded that Plaintiff retained the following residual functional capacity ("RFC"):

> [P]erform light work . . . except he can never climb ladders, ropes, or scaffolds but can occasionally perform the remaining postural activities. He should avoid concentrated exposure to hazards. He is further limited to unskilled work, SVP 1 or 2, simple, routine, and repetitive tasks.

(Tr. 15.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not fully credible. (Tr. 15.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined that Plaintiff could not perform his past relevant work. (Tr. 18.) Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a cleaner (housekeeping), an agricultural produce sorter, and a shoe packer. (Tr. 19.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 19–20.)

**APPLICABLE STANDARDS**

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20

C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**ANALYSIS**

On appeal, Plaintiff argues that the ALJ erred at step three of the sequential process by finding that Plaintiff does not meet Listing 12.05(B). (Dkt. 17.) In response, Defendant argues that the ALJ properly evaluated whether Plaintiff meets Listing 12.05(B) and that Plaintiff does not meet its criteria. (Dkt. 18.) For the reasons that follow, Plaintiff's contention does not warrant reversal.

At the third step of the sequential analysis, a claimant must show that his or her impairment meets or equals a listed impairment. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991). To show that an impairment meets a Listing, a claimant "must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.*

To be considered for disability benefits for intellectual disability under Listing 12.05, a claimant must first satisfy the diagnostic description in the introductory paragraph for the Listing, which requires that a claimant demonstrate significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested before age twenty-two. Social Security Administration, Program Operations Manual System, DI 34132.009, § 12.05, *Mental Listings from 12/18/07 to 09/28/16: 12.00 Mental Disorders (Effective Date: 09/18/00)*, Obsolete Versions of Part A, the Listing of Impairments, (revised Jan. 13, 2017), https://secure.ssa.gov/apps10/poms.nsf/lnx/0434132009 ("Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."); *O'Neal v. Comm'r of Soc. Sec.*, 614 F. App'x 456, 459 (11th Cir. 2015) ("The introductory paragraph in 12.05 requires that [claimant] exhibit (1)

significantly subaverage general intellectual functioning (2) with deficits in adaptive functioning (3) that manifested before age 22.").

In addition to meeting the diagnostic threshold, a claimant must meet the severity requirements in Section A, B, C, or D of Listing 12.05. DI 34132.009, § 12.05. ("The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied."). Relevant to this appeal, Section B of Listing 12.05 requires "[a] valid verbal, performance, or full scale IQ of 59 or less." *Id.* § 12.05(B). Therefore, in order to meet Listing 12.05(B), a claimant must have a valid verbal, performance, or full scale IQ of 59 or less and "significantly subaverage general intellectual functioning with deficits in adaptive functioning" that manifested before the claimant was 22 years old. *Id.* § 12.00.A. ("If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.").

In the decision, the ALJ evaluated Plaintiff under Listing 12.05 and found that Plaintiff did not meet the criteria of the Listing. (Tr. 13–14.) Specifically, concerning Listing 12.05(B), the ALJ concluded as follows regarding Plaintiff's IQ scores:

> Turning to the requirements in paragraph B, they are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 59 or less. No recent IQ scores are contained in the record; however, remote IQ tests from February 1982, when the claimant was 16 years old[1] are available and show the claimant achieved a verbal IQ score of 73, a performance IQ of 51, and a full scale IQ of 59. Based on test scores, the claimant was determined to function within the mentally deficient range of cognitive ability.

(Tr. 13.) The ALJ cites Plaintiff's 1982 IQ scores from testing performed by the Polk County school system, which were administered when Plaintiff was fifteen years old and in the eighth

---

[1] As Plaintiff acknowledges (Dkt. 17 at 15), he was fifteen years old, not sixteen, at the time of this IQ testing.

grade. (Tr. 386–90.) Plaintiff scored 73 for his verbal IQ, 51 for his performance IQ, and 59 for his full scale IQ. (Tr. 390.)

Plaintiff argues that because the ALJ placed less weight on the validity of Plaintiff's IQ score because they were over thirty years old, the ALJ should have requested additional IQ testing be performed. (Dkt. 17 at 9.) However, the case Plaintiff cites to support this contention is inapposite. (Dkt. 17 at 9) (citing *Berryman v. Massanari*, 170 F. Supp. 2d 1180 (N.D. Ala. 2001)). In *Berryman*, the ALJ rejected results of a *recent* IQ test because the examiner did not include a statement that the IQ scores were valid. *See Berryman*, 170 F. Supp. 2d at 1185. The district court, on appeal, found this finding "ludicrous" and unsupported by substantial evidence, reasoning as follows:

> It is ludicrous for the ALJ to assert that Dr. Lyons gave no indication as to the validity of the plaintiff's I.Q. scores while noting that he diagnosed the plaintiff as functioning in the "extremely low" category. If Dr. Lyons did not believe the tests were valid, he would not have made that diagnosis and there is nothing in his report that even hints that he did not believe the scores to be valid. The ALJ's finding that the plaintiff's I.Q. scores were not valid was based solely on his own unsupported opinions as to the plaintiff's mental capacity. The ALJ, therefore, "succumbed to the [forbidden] temptation to play doctor and make [his] own independent medical findings." *Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir.1996). If the ALJ was in doubt as to the validity of the plaintiff's I.Q. scores, he should have sought clarification of the test results from Dr. Lyons, or ordered additional testing. Because of the Commissioner's duty to develop the medical record fully and fairly "it is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision."

*Id.*

Unlike *Berryman*, here the ALJ found Plaintiff's IQ scores from 1982 remote and "not entirely relevant." (Tr. 13.) Social Security regulations used to assess children's disability claims provide that "[i]t is of the utmost importance in evaluating mental deficiency that IQ test results be sufficiently current to give an accurate and realistic picture of mental capacity," and IQ scores of 40 or above are considered current for two years for children over age seven. Social Security

Administration, Program Operations Manual System, DI 24515.055, § D.1., *Evaluation of Specific Issues Psychological/Psychometric Testing*, (revised Mar. 2, 2017), https://secure.ssa.gov/apps10/poms.nsf/lnx/0424515055. District courts apply this standard in evaluating the validity of IQ scores in adult disability cases. *E.g.*, *Wilson v. Colvin*, No. 1:14-CV-00066-MP-GRJ, 2015 WL 5047734, at *7 (N.D. Fla. Aug. 27, 2015) ("The scores which Plaintiff contends bring her within listing 12.05B are not sufficiently current, as they are from 1978 when Plaintiff was only twelve years old" and "the tests were conducted more than thirty years before the ALJ rendered the decision in this case"); *Seabrooks v. Colvin*, No. 5:13CV89/EMT, 2014 WL 5483169, at *10 (N.D. Fla. Oct. 29, 2014) (finding that the ALJ did not err in finding thirty-year-old test scores invalid); *Lewis v. Astrue*, No. CIV.A. 08-0583-CB-M, 2009 WL 1904319, at *3 (S.D. Ala. July 1, 2009) (concluding that "the ALJ's decision not to rely on [claimant's] IQ test results from twenty years earlier was proper" because claimant "was only fifteen at the time she was first tested, so under the regulations, those results would no longer be considered current"); *Stutts v. Astrue*, 489 F. Supp. 2d 1291 (N.D. Ala. 2007) ("Because these IQ scores were achieved before the plaintiff reached the age of 16, they are not deemed to be valid as to the plaintiff's current level of intellectual functioning.").

Accordingly, the ALJ did not err in finding Plaintiff's 1982 IQ scores "not entirely relevant." Nonetheless, even if the ALJ erred by not finding the IQ scores valid, the ALJ's findings regarding Plaintiff's adaptive functioning are supported by substantial evidence. While "[a] valid IQ score of below 70 creates a rebuttable presumption that a claimant manifested deficits in adaptive functioning before age twenty-two," *Rodriguez v. Comm'r of Soc. Sec.*, 633 F. App'x 770, 773 (11th Cir. 2015), "the Commissioner may present evidence relating to a claimant's daily life to rebut this presumption." *O'Neal*, 614 F. App'x at 459 (citing *Hodges v. Barnhart*, 276 F.3d

1265, 1269 (11th Cir. 2001)).  Thus, valid IQ scores "need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992).

Regarding Plaintiff's deficits in adaptive functioning, the ALJ concluded as follows:

> Despite the claimant's low scores, which are over 30 years old and not entirely relevant presently, the record contains little to no evidence that the claimant has deficits in adaptive functioning that initially manifested before age 22, and in fact, the record supports that he sustains a high level of adaptive functioning. Although the claimant states he depends on services from the Salvation Army where he lives, he independently cares for his personal needs, he maintains a romantic relationship his wife, he has 5 children, he has worked in the past, and despite completing only 7th grade, he indicated that he is able to read and write some (Exhibits 5F, 9F; Hearing Testimony).  These above factors are not consistent with the required adaptive deficits, and as such, the claimant does not satisfy the paragraph B criteria.

(Tr. 13–14.)  Plaintiff argues that his testimony that he does not live independently, cook, do laundry or yard work, or go to the grocery store, and is unable to read (Tr. 30, 34, 36–37), lessens the import of the evidence of daily activities the ALJ relied on and demonstrates Plaintiff's deficits in adaptive functioning.  (Dkt. 17 at 7–8.)  The standard this Court must follow, however, is whether substantial evidence supports the ALJ's decision. *Rodriguez*, 633 F. App'x at 774 (finding the ALJ's decision that claimant did not have deficits in adaptive functioning supported by substantial evidence despite "other evidence in the record [that] may support [claimant's] arguments").  At his hearing before the ALJ, Plaintiff testified that he is able to dress and bathe himself, clean his room when he does not have pain in his leg, and count money.  (Tr. 34, 37.)  Accordingly, the Court "cannot say that the ALJ's decision is not supported by substantial evidence." *Rodriguez*, 633 F. App'x at 774.  Therefore, because the ALJ did not err in determining that Plaintiff does not meet Listing 12.05(B), reversal is unwarranted.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Tampa, Florida, on January 16, 2018.

JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record